Paducah and Elizabethtown R. R. Co. v. The Commonwealth.

CASE 28—INDICTMENT—MARCH 9, 1882.

# Paducah and Elizabethtown R. R. Co. v. The Commonwealth.

### APPEAL FROM GRAYSON CIRCUIT COURT.

1. The facts averred in the indictment constitute a public nuisance. Although not verbally accurate, they are sufficient.
2. Appellant, under its charter, cannot be permitted to destroy the usefulness of a public road by raising its rails so high at a crossing that it is dangerous to persons and animals to pass over appellant's track.
3. When a railroad company lays its track over a public highway, it is necessary that the company shall have paramount control over its track and the right to regulate the repairs necessary to the use of the public in crossing, and they are therefore responsible to the public as well as individuals for a failure to keep such crossings in repair.
4. When a verdict is decided by lot, it should be set aside.

H. C. PINDELL FOR APPELLANT.

The indictment is insufficient. It is not the duty of a railroad company to keep in repair public highways at points where the railway crosses it. That duty is devolved upon the surveyor of roads in each county along the line of the railroad. An averment that the company is incorporated is material; it is not made. (18 Penn. State Rep., 68; Commonwealth v. Dudley, 3 Met., 222; Wool on Ways, 4 Law Lib., 158; Commonwealth v. White, 18 B. M., 492; 1 Duv., 90; Crim. Code, secs. 157, 175.)

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. Although the indictment does not allege that the railroad belongs to appellant, it does aver that appellant willfully neglected to keep in repair the crossing indicated.

2. It is the duty of appellant, unless relieved by a statute, to keep its crossings in repair. It controls the height of its track, and must keep the crossings with regard to public convenience. (74 N. Y., 302; 31 Ohio, 338; 67 Ill., 118.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant company was indicted for a public nuisance, alleged to have been committed by neglecting to keep in repair the crossing where its road intersects with the Litchfield and Elizabethtown public highway.

The facts stated in the indictment constitute a public nuisance, and the allegations thereof are legally sufficient; although not verbally accurate, yet they are so plainly stated that a person of ordinary understanding would know what is intended.

The evidence establishes, with reasonable certainty, that the crossing was very muddy and miry, and that the iron rails of appellant's road were as much as six or eight inches above the level of the highway, so that it was difficult to draw wagons and vehicles up over them, and that it was dangerous to animals and persons to travel over the crossing, which was permitted to remain so out of repair for at least six weeks before the indictment was made.

Soon after the indictment the appellant repaired the crossing, and has kept it in good order ever since.

From a verdict and judgment for $700 against it the appellant has appealed, and insists that it was not bound to repair that part of the crossing outside of and approaching the rails of its road, although within thirty feet of them, and embraced by the company's right of way; but that

the duty of repairing that portion of the crossing belonged exclusively to the surveyor of the public highway.

Any authorized use of the highway, in the absence of special authority under the charter, must be presumed to have been granted on the condition that its exercise should be consistent with the establishment of the highway and accordant with its use by the public.

The restoration of highways with which railroad companies have interfered is generally regulated by statute; but where there is no statute, the common law requires that the railroad companies should restore them to such condition as will not impair their usefulness, "for it can scarcely be supposed that the legislature intends, in any case, to allow a railroad company needlessly and permanently to destroy a public way." (Sec. 452, Sherman & Redfield on Negligence.)

And it would seem to be a necessary corollary from this rule that the railroad company should not be afterwards permitted to destroy the usefulness of a public way by allowing its own road and the approaches thereto to become dangerous for the want of repairs.

Where an individual or railroad company permanently occupies a highway or street which is a public road, they are bound to keep the portion occupied by them "in such a reasonable state of repair that travelers may safely pass over them." (Sec. 357, *Ibid.*)

And in discussing this question, the court said in Oakland R. R. Co. v. Fielding, 48th Penn. St., 320, that it was the railroad company's duty to keep the street where the injury occurred, and its road occupied it, in good repair, and they are primarily liable for an injury occasioned by the want of repair.

It is the result of several authorities that a railroad company, having undertaken to lay down its track along a street which is a public road, is bound to lay it down properly and keep it in a proper condition. (1 Daly, 148; 9 N. Y., 163; 1 Hill, 436.) So, where a railroad company lays its track across a public highway, reason and necessity unite in demanding that the company should have paramount control over the full extent of its right of way, and the right to make and regulate the repairs necessary to the use of crossings by the public; and, as a consequence of this authority, become responsible to the public and individuals for injuries resulting from a failure to repair, or from unskillful repairs of such crossings.

For if overseers of highways traversing railroads are either admitted or required to enter the space covered by the company's right of way, uncontrolled by it, for the purpose of repairing the crossings or approaches to them, disastrous consequences might result to the company from the negligence or unskillfulness of overseers without the power or privilege to avoid them.

For these reasons we think it was the company's duty to keep the crossing and its immediate approaches in such repair as would enable the public to use it with reasonable security and convenience.

The appellant maintains that the verdict was decided by lot, and was not a fair expression of opinion by the jurors.

This was one of the grounds relied on for a new trial, and in support of it the affidavits of four members of the jury were read on the trial of the motion.

They swear that, under the influence of one of their number, who said the practice was allowable, each juror put down on a piece of paper the amount of fine he thought

Paducah and Elizabethtown R. R. Co. v. The Commonwealth.

ought to be assessed; the whole were added together, and the result divided by twelve, and the sum so found was $700, for which the verdict was rendered.

They state that before the verdict was thus ascertained they agreed that it should depend upon the result of the division, and the amount of the verdict was, in their opinion, more than was right.

Some of the jurors set down sums as high as $3,000, which was manifestly unjust, excessive, and the result of passion.

A verdict thus obtained and given is highly reprehensible, and the consequence of a decision by lot, which is forbidden by section 271, Criminal Code, that provides, ''if the verdict have been decided by lot, or in any other manner than by a fair expression of opinion by the jurors,'' it shall be a cause for a new trial.

And for the purpose of effectively destroying the practice of finding verdicts by lot in cases of felony and misdemeanors prosecuted by indictment, the Code provides by section 272 that a juror may be examined to establish that the verdict was made by lot.

While we think the necessity for preventing such verdicts is great, we also recognize the danger in overturning verdicts by the evidence of those who have solemnly agreed to them, in the privacy and sanctity of the jury room; yet when the evidence of the jurors is clear, undoubted, and uncontradicted that the verdict was decided by lot, it ought to be set aside.

Verdicts found by lot are the issue of ignorance, passion, or indifference to the rights of life, liberty; and property, and shows an utter disregard for the rules of law and fair deductions that should be made from the evidence, and they should not be tolerated in cases of this character.

Therefore the judgment is reversed, and cause remanded with directions to grant appellant a new trial.