## Louisville & Interurban Railroad Company v. Speckman.

(Decided March 24, 1916.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Railroads—Sales—Liability of Purchaser.—In an action for damages sustained on account of a defective retaining wall of a crossing or approach thereto, it is not material whether the wall, crossing and approach were constructed by a former owner of the railroad, the receiver thereof, or the present owner, purchaser at a judicial sale, for the latter by acquiring the property and maintaining it in the manner adopted by its predecessor made itself responsible for whatever defects existed in its construction or resulted from its use and, in addition, assumed all of the duties with respect to the property imposed by law.

2. Railroads—Construction and Maintenance—Restoring and Maintaining Highway at Crossing.—Under subsection 5, section 768, Kentucky Statutes, a railroad company upon crossing a highway with its track must restore the highway to its original condition as near as may be and construct and maintain such approaches as will make the crossing reasonably safe and convenient for the traveling public, and such duty cannot be delegated by the railroad company to road overseers or other officials of the county.

3. Railroads—Construction and Maintenance—Restoring and Maintaining Highway.—Where a retaining wall, though several feet

outside the right of way, is a support both for the railroad road-bed and approach to a crossing, the railroad company alone is charged with the duty of properly constructing and maintaining the wall in a condition to make the approach and crossing safe for travel.

4.  Railroads—Injuries From Construction or Maintenance—Evidence.
    —In an action for damages caused by the alleged defective condition of a retaining wall of a railroad crossing and approach, resulting, as claimed, by the giving way of the wall and falling of plaintiff's automobile into a ditch; evidence examined and held sufficient on all issues of fact to require submission to the jury and authorize the verdict returned for the plaintiff.

5.  Appeal and Error—Damages—When Not Excessive.—In an action for damages sustained to the person and automobile of plaintiff, where it appears that the automobile was damaged to the extent of $400.00 and where plaintiff was bruised about the head and body and sustained a wound three inches in length in his leg, by a bolt of the machine penetrating to the bone, which injuries caused him to be confined to his bed or room for three weeks and to go on crutches three weeks longer, and from which injuries he suffered great pain from the time of the accident to the time of the trial and still so suffers, and the wound will result in permanent partial disability, this court will not say that $1,500.00 damages awarded for the injuries both to plaintiff's person and automobile were grossly excessive.

STRAUS, LEE & KRIEGER, BLAKEY, QUIN & LEWIS and HUSTIN QUIN for appellant.

EDWARDS, OGDEN & PEAK and LAWRENCE F. SPECKMAN for appellee.

.OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Lawrence F. Speckman, in returning in his automobile on the Shelbyville pike from Simpson-ville, Shelby county, to Louisville, the city of his residence, Sunday evening, October 4, 1914, upon reaching a point where the appellant Louisville & Interurban Railroad Company's railroad track crosses the Shelbyville pike, sustained injuries to his person and automobile by the falling of the latter into a ditch five or six feet below the edge of the turnpike. Appellee brought this action against the appellant railroad company to recover damages for the injuries to his person and machine, alleging in the petition that same were caused by the negligence of the latter in failing to maintain in such condition as made them reasonably safe for use by the traveling public, its crossing and approach thereto,

and in maintaining a defectively constructed stone wall as a support to its roadbed and the approach to the crossing, which gave way under the weight of the automobile and caused it and its occupants to slide and fall into a contiguous ditch five or six feet below the surface of the crossing. The answer of appellant denied the negligence charged and pleaded contributory negligence on the part of appellee. The trial resulted in a verdict in appellee's favor for $1,500.00 damages, from the judgment entered upon which the railroad company has appealed.

At the point of the accident the Shelbyville turnpike runs east and west and the stone wall mentioned in the petition is on the south side of the pike, and was constructed as a support for the fill, crossing and approach to the crossing, the pike being built out to the wall, with its edge and surface extending to and covering the top of the wall. The wall is not of solid or rubble masonry, but composed of what is known as riprap or loose stone work, and is about forty or forty-five feet in length. Appellant's track runs parallel with the pike until it reaches the fill at the crossing, where it enters the pike and running obliquely crosses the pike at rather an acute angle, and for a distance of fifteen or eighteen feet the track and pike are on the same fill; that is, the fill for that distance constitutes a highway for the public and roadbed for the track of the railroad company. It is alleged in the petition and appellee's evidence conduced to prove that at the point where his automobile fell into the ditch the space between the edge of the pike on top of the retaining wall and the center of the railroad track was only about eight feet and four inches, and that for a distance of fifteen or eighteen feet the travel is practically confined to this space. On the other hand, it is the contention of appellant and its evidence conduced to prove that from the point where the automobile fell into the ditch there is a space for travel of about twelve feet, which continues for a distance of fifteen or eighteen feet and until the railroad track is crossed.

It appears from appellee's evidence that in approaching the crossing on the night in question he slowed his automobile to a low rate of speed, this being necessary to enable him to pass a buggy which he met at that point; that when he reached a point within two feet of the buggy he stopped the automobile, being still on the

traveled way, leaving a space of twelve or fourteen inches between the wheels of the automobile on the outer side and the edge of the retaining wall; that almost instantly after stopping the automobile the occupants felt it give way or slip on the side next to the retaining wall, discovering which appellee, who was operating the machine, attempted to start it, in doing which it continued to slip and finally fell over the wall into the ditch, a distance of five or six feet below, carrying some of the rock from the top of the wall at each wheel with it. Two ladies who were with appellee in the automobile were not seriously injured in the accident. The injuries received by appellee consisted of various bruises about his body and face and a wound in the back of the leg below the knee, caused by a bolt of the machine which penetrated the leg to the bone and cut and lacerated the flesh, making a wound three inches or more in length. The automobile was badly broken and wrecked.

It is insisted by appellee that the accident resulting in his injuries occurred on the traveled way of the pike and on the crossing, or approach thereto, which the law made it the duty of appellant to construct and maintain in such condition as to make it or them reasonably safe for the use of the public, whether traveling the turnpike in automobiles or other vehicles; that appellant failed to perform this duty and so defectively constructed and maintained the fill constituting the crossing and approach thereto as to leave too little space and render same unsafe for travel; and, further, so defectively constructed and maintained the stone wall intended as a support for the fill, crossing and approach thereto, as to render the wall unsafe for such purpose and the crossing and approach dangerous to persons traveling the pike and using the crossing; and, finally, that appellant's negligence in the particulars mentioned resulted in and caused the injuries sustained to appellee's person and automobile. The evidence introduced in appellee's behalf, appearing in the record, strongly conduced to prove his several above-stated contentions.

On the other hand, it is the contention of appellant that it did not construct the fill at the crossing, the approach to the crossing or the retaining wall supporting the fill; that the railroad now owned by it was originally constructed and owned by a corporation known as the Louisville & Eastern Railroad Company, which obtained

from the fiscal court of Jefferson county, through an order thereof, permission to cross such of the public highways of the county as were intersected by its right of way; that the road went into the hands of a receiver before its completion and the actual work of constructing the railroad track across the Shelbyville pike at the place of the accident in question was done by the receiver of the Louisville & Eastern Railroad Company and in pursuance to the order of the Jefferson fiscal court mentioned; and that the work was done under the supervision of the county officials, and, upon its completion, that the pike was restored to its former condition as near as could be; that appellant thereafter bought the railroad right of way, track and other equipment under a decree of the Federal court; that its right of way so acquired is limited to the space between the rails and three feet on either side, and that its duty goes no further than to maintain only so much of the crossing over the Shelbyville pike as is included in its right of way, in such manner as will make it reasonably safe for the use of persons using the crossing, which it has not at any time failed to do; that the point on the Shelbyville pike and approach to the crossing where appellee's automobile fell into the ditch, is outside of and constitutes no part of appellant's right of way, and is, in fact, in the portion of the pike cared for under the supervision of the fiscal court of Jefferson county. Furthermore, that appellee's injuries and the injury sustained to his automobile were not caused by any defect in the crossing, approach thereto or retaining wall, but resulted from his own negligence, which so contributed to the injuries that but for same they would not have been received; that on the occasion of the accident, in approaching the crossing, appellee, in attempting to give way for the buggy encountered by him at the time, so changed the course of his automobile as to compel the wheels on the south side to leave the pike and go outside the end of the retaining wall, which caused it to slip and fall into the ditch several feet below.

The foregoing contentions of appellant found support in much of the evidence introduced in its behalf. However, although some of appellant's evidence was to the effect that the receiver of the Louisville & Eastern Railroad Company constructed the roadbed and laid the track at the crossing, such of it as was directed to showing

when and by whom the fill and retaining wall were made does not convincingly establish that they were made by the receiver or before appellant acquired the railroad. Indeed, some of it was to the effect that the fill and retaining wall were made by the receiver and some of it that they were made by the county; but several of appellee's witnesses testified that after the railroad became the property of appellant it elevated the ground at and approaching the crossing two and a half or three feet, to accomplish which it had to make, and did make, the fill or raise it, to obtain the desired elevation of the crossing and approach, and that it then also constructed the wall. It will readily be seen, therefore, that the evidence as to this matter was so conflicting as to necessitate the submission of the issue of fact to the jury. The same is true of the evidence as to the distance from the railroad track of the point at which appellee's automobile slipped and fell into the ditch, that of appellee conducing to prove that the distance from the center of the track to the machine at the time it fell into the ditch was only eight feet and four inches, while that of appellant conduced to prove that the distance was about twelve feet. The evidence relied on by appellant to show contributory negligence on the part of appellee consists wholly of the testimony of one or two witnesses as to the finding of one or two stones which seem to have been dislodged from the retaining wall, and the opinion expressed by them that this was done by the wheels of the automobile and could only have resulted from the running of its outer wheels, or one of them, outside of that part of the retaining wall first reached by the machine in approaching the crossing, and possibly by a subsequent effort to get such wheel or wheels back upon the surface of the pike. Such testimony, being based upon conjecture, is entitled to little weight as against the positive statement of appellee and the other occupants of the automobile that the automobile, upon reaching the end of the stone wall, was upon the pike with its wheels next to the wall, not closer than twelve or fourteen inches to the top of the wall, and that such was the position of the machine when the wall and ground on that side of it gave way and precipitated it into the ditch. Manifestly the proof of contributory negligence was not sufficient to authorize the court to say as a matter of law that it should have defeated a

recovery by the appellee, consequently the giving of the peremptory instruction directing a verdict for appellant on that ground would not have been proper.

The principal issue in the case is as to whether the place of the accident was a part of the crossing or an approach or appurtenant thereto that plaintiff was charged with the duty of maintaining or restoring in such manner as would make it reasonably safe for use by those traveling the turnpike. It is not material whether the crossing or approach, including the retaining wall, were constructed by the Louisville & Eastern Railroad Company, the receiver or appellant, for the latter, by acquiring the property and maintaining it in the manner adopted by its predecessor, made itself responsible for whatever defects existed in its construction or resulted from its use, and in addition assumed all of the duties with respect to the property imposed by law, these duties being, in part, at least, defined by section 768, Kentucky Statutes, sub-section 5 of which reads as follows:

"To construct its road upon or across any water-course, private or plank road, highway, street, lane or alley, and across any railroad or canal; but the corporation shall restore the water-course, private or plank road, highway, street, lane, alley, railroad or canal to its former condition, as near as may be, and shall not obstruct the navigation of any stream, or obstruct any public highway or street, by cars or trains, for more than five minutes at any one time; and shall construct suitable road and street crossings for the passage of teams by putting down planks or other suitable material between and on each side of the rails, the top of which shall be at least as high as the top of the rails of such road or street; and in case the road is constructed upon any public street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be, but such road shall not be constructed upon any street or alley until compensation shall be made by the corporation therefor to the owner of the property adjoining such street or alley, and opposite where such road is to be constructed, either by agreement or in the manner provided by law."

One of the duties named in the statute, *supra,* is thus defined in 33 Cyc. 280:

"The duty of restoring, maintaining and repairing highways crossed by a railroad is a condition inseparable from the right to cross and attaches to whatever person or company exercises the franchise and is therefore binding upon the successors of the company by which the crossing was originally effected, including purchasers at judicial sales. This duty is not affected by the fact that the railroad company may be insolvent and in the hands of a receiver."

The duty referred to in the foregoing statement is one that should be performed by the railroad company itself, for it cannot be safely intrusted to the road overseers or other authorities of the county, unskilled in the work of maintaining railroad crossings and approaches thereto. The necessity of imposing this duty upon the railroad company is recognized in Commonwealth v. L. & N. R. Co., 109 Ky. 59, in which we said, quoting from the opinion in Paducah & E. R. Co. v. Commonwealth, 80 Ky. 147:

"For as overseers of highways traversing railroads are either admitted or required to enter the space covered by the company's right of way, uncontrolled by it, for the purpose of repairing the crossings or approaches to them, disastrous consequences might result to the company from the negligence or unskillfulness of overseers, without the power or privilege to avoid them. For these reasons we think it was the company's duty to keep the crossing and its immediate approaches in such repair as would enable the public to use it with reasonable security and convenience." Jeffery v. Detroit L. & N. R. Co., 31 L. R. A. 170.

Applying the reasons thus given to the instant case, in view of the fact that the roadbed of the appellant extends to the retaining wall, though at a point several feet distant from the place of the accident, and that the wall is used to retain and support the fill of the roadbed and approach thereto, the company should alone be charged with the duty to maintain the crossing and approach in proper condition. If it should be held that the duty of maintaining the wall which supports appellant's roadbed at the crossing, as well as the approach to the crossing, rests upon the county of Jefferson, the effect would be to clothe it with the authority to remove the wall or make such changes in the fill as might result in injury to, if not the destruction of, appellant's roadbed.

The character of approaches to a crossing that are required to be constructed by a railroad company is stated in L. & N. v. Commonwealth, 149 Ky. 459:

"When, as in this case, the railroad company reconstructs its road or builds a new track, it must restore the highway to its original condition as near as may be, and it must construct approaches sufficient for this purpose, although it may be necessary for it to go out on the highway beyond its right of way in building the approach, for if in this case the track had been within twenty feet of the line of the right of way and the fill had been twenty feet high, it is clear that the highway would have been practically destroyed unless the approach was built out beyond the line of the right of way. In such cases, the railroad company must make an adequate fill on the highway to give it a reasonable grade, and after it has restored the highway to its original condition as near as may be, it is then only bound to keep in order that part of the highway which is within the right of way; but it must, in the first instance, make such a fill as will restore the highway to its former condition as near as may be. In the case before us we are satisfied, from the proof, that the company failed to do this, at least before the indictment was filed, and that the evidence fully justifies the finding of the jury against it."

The following statement of the same rule is given in 33 Cyc. 273:

"It is not sufficient for a railroad company properly to construct a crossing and to restore the highway crossed to a proper condition; but it is the duty of the company subsequently to keep and maintain the crossing in a safe and suitable state of repair, including not only the crossing of the tracks, but the approaches thereto. This is a common law duty, but is frequently expressly imposed by statutory or charter provisions. So also a continuing obligation to keep the crossing in repair is imposed by a statutory or charter provision that it shall be so constructed as not to obstruct the safe and convenient use of the highway. * * * The duty of making repairs applies to the whole structure built by the railroad company for the purpose of crossing, although extending beyond the limits of the right of way, and applies not only to the substructure or support, but also the surface or roadway upon the bridge

or approaches, unless it is otherwise provided by statute; and where the railroad crosses below the grade of the highway in a cut, the duty extends to the entire width of the excavation made for the railroad.''

Again on page 925 of the same volume it is said: ·

"As a general rule it is the duty of a railroad company, both by virtue of statute, and under the principles of common law, to use reasonable care to so construct and maintain in good repair crossings and approaches over all public streets and highways intersecting the line of its road that they will be reasonably safe and convenient for the usual and ordinary purposes of the public; and its failure to do so renders it liable to one who is injured by reason thereof while making a proper, reasonable and necessary use of the crossing; and the railroad company is not relieved of this liability by the fact that the party injured also has a remedy therefor against certain county or municipal authorities.'' State of Minnesota v. Minn. Trans. R. Co., 50 L. R. A. 656.

Attention has been called elsewhere in the opinion to the peculiar location of the wall with respect to appellant's track and how it forms a material part of its roadbed; also to its defective and unsafe condition, in view of which the question as to the sufficiency of the approach as constructed was one of fact to be submitted to the jury upon the evidence heard by them. According to appellee's evidence, the pike was not restored to its former condition "as near as may be,'' and whether the failure to so restore it is attributable to an omission of duty upon the part of appellant, the previous owner or its receiver, in either or any event appellant would be liable for the injuries sustained by appellee and to his automobile, if they were caused by such failure of duty.

The defects in the approach to the crossing and retaining wall complained of by appellee are: (1) That the wall on the south side of the pike and railway track, constructed by appellant as a retaining wall for its roadbed, as well as the approach to the crossing, was improperly made of loose rock of unequal sizes and so perpendicular as to materially affect and reduce its power of resistance; (2) that the wall was constructed without a guard or railing and in such a manner as that the approach to the track was extended to the edge of the wall, which invited travel to the edge of the wall and made the support given the pike by the wall insufficient to withstand the weight of a heavy vehicle like an auto-

mobile; (3) that the pike constituting the approach to the crossing along and within the wall was so defectively constructed along its south side as to be liable to slough off or give way under the weight of an automobile; (4) that the angle at which appellant's track was laid across the pike, the height of the retaining wall, the defectiveness of its construction both as to material and work, and the insufficiency of the width of the pike between the retaining wall and the railroad track, prevented the approach to the crossing from being reasonably safe for the use of the traveling public, and, in fact, rendered it dangerous for such use.

As there was evidence tending to show that the above specified defects appear to have resulted from the improper or faulty original construction of the fill and wall, it furnishes support for appellee's contention that in constructing the crossing there was, a failure to restore the turnpike to its former condition of safety, as required by law; and if the fill and wall constitute a part of appellant's roadbed and crossing and approach to the crossing, as appellee's evidence also conduced to prove, though both were constructed by the previous owner of the railroad, appellant, in failing to restore the highway to its original condition and by maintaining the crossing and approach in the same defective condition and thereby rendering the approach to the crossing at the place where appellee was injured not reasonably safe for travel, made itself liable for the latter's injuries, if they were received in the manner claimed by him.

In view of the situation presented by the evidence appellant's claim that the fiscal court of Jefferson county, without complaint of its condition, took control of that part of the fill constituting the approach to the crossing, including the place of the accident, even if there had been any satisfactory proof to sustain such claim, did not relieve appellant of its duty to restore the fill and approach to its former condition; that is, make it as reasonably safe for use by the traveling public as it was prior to the construction of the crossing.

The conclusions expressed have not been reached by us without a consideration of the scope and meaning of the order of the fiscal court by which appellant's vendor obtained the right to construct its roadbed across the Shelbyville pike and other highways of Jefferson county. The rights granted by the order do not, however, differ

from those conferred on railroad companies by sub-section 5 of section 768, Kentucky Statutes. Neither the statute nor order contemplated that the county or its fiscal court should be put to the expense of remedying any change or dangerous condition in the highway caused by the railroad company, but that the burden thereof should be borne by the latter. Our meaning is well stated in the following excerpt from the opinion delivered by the judge of the circuit court in overruling appellant's motion and grounds for a new trial:

"The railroad in exercising its statutory right to cross the highway must comply with its statutory and common law duty of restoring the highway in every respect. To restrict the duty of the railroad company to its 'right of way' or to the 'width of its track' would be, in many cases, to nullify both the statute and common law relating to the matter. If the grade of the railroad requires the company, in making the crossing, to build an embankment across the highway ten feet high, most assuredly the duty of the company would require it to construct approaches on each side so as to enable the tracks to be crossed with reasonable ease by the traveling public, although in doing so it may have to extend the approaches forty feet or more beyond its 'right of way' or beyond the 'width of its tracks,' and in constructing said approaches it must make them as safe (as nearly as can be under the circumstances) as the highway was prior to the time said crossing was made. Until it has done this, it has not fulfilled its obligation to the public, and it matters not, as between it and one who is injured by its failure, what the county may, in the meantime, do in the way of maintaining the highway. The county authorities, by assuming jurisdiction over any part of the highway cannot relieve the railroad company of the duty placed upon it by the law.

"If these principles are kept in mind, and if the further fact is kept in mind that the evidence in this case tends strongly to show that the highway in question was never restored to its former condition (with reference to safety) after the embankment and approaches in question were constructed or were raised in height by the railroad company, it seems to the court that the reasoning of defendant in its brief fails in its application. * * * The railroad crosses the pike at a very acute angle. There was evidence tending to show that

the wall in question was a part of the fill, or at least the support of the very fill upon which the track of the railroad rested. In other words, it was a part of or a support to the bed of the railroad itself. The jury, on the motion of both parties, viewed the premises and saw the conditions. There was evidence that the railroad company constructed this fill and retaining wall, or raised it in height and in such a manner as to materially increase the danger. The railroad has continued to operate its cars over it without doing anything to restore the former condition of safety or to protect the traveling public from the dangerous condition thus created and maintained by it, according to this evidence. The court's instructions authorized a recovery for only such wrongful acts as were done by the defendant, and expressly excluded the right of recovery because of any dangerous condition that might have been created by the county authorities at that point."

After all is said, the question here involved is not, as argued by counsel for appellant, whether a railroad company can be compelled to maintain a public highway crossed by its road for a given distance on either side of the track, but whether it is its duty to maintain, or rather to restore to its original condition and make reasonably safe for the use of the public, so much of the highway as it may have adopted as an approach to its crossing and support for its roadbed at the crossing. If correct in our apprehension and statement of the issues of law and fact presented by the pleadings and proof, it follows that the refusal of the trial court to peremptorily direct a verdict for appellant, as requested by its counsel, was not error.

We fail to discover any merit in the objections urged by appellant's counsel to the instructions given by the trial court. They are here omitted because of the undue length to which they would extend the opinion. They are expressed in substantially correct terms and appear to omit no feature of the law necessary to the proper guidance of the jury in arriving at a verdict. Instruction No. 1 confined the right of recovery to the grounds of negligence relied on in the petition, and which, as we have indicated, would, if established by the evidence to the satisfaction of the jury, entitle appellee to a verdict. Instructions 2 and 3 advised the jury what state of facts, if shown by the evidence, would defeat a re-

covery by appellee and authorize a verdict for appellant. No. 4 defined contributory negligence as applied to appellee. No. 5 defined ordinary care and negligence, and No. 6 defined the measure of damages to be applied by the jury, in the event they returned a verdict for the appellee. We find no error in the instructions. As a whole they fairly stated the law.

Appellant's final complaint is that the verdict is excessive. It is not to be overlooked that the $1,500.00 damages awarded appellee by the verdict includes compensation for the injuries sustained to his person and the injuries to his automobile as well. According to the testimony of the witness Kolb, a machinist and automobile repairer, appellee's automobile before and down to the time of the accident was in an excellent state of repair and had a market value of $500.00; but that it was so nearly demolished by the fall into the ditch as to reduce its market value to $100.00. This testimony of Kolb was corroborated by appellee and one or two other witnesses, and does not appear to have been contradicted by any witness testifying for appellant. These estimates show, therefore, that appellee was damaged to the extent of $400.00 by the wrecking of the automobile, and while the verdict does not segregate the damages awarded, by showing what was allowed for the injuries to the machine and what was allowed for the injuries to the person of appellee, in view of the evidence as to the damage to the machine it would do no violence to the rights of appellant to assume that $400.00 of the amount awarded by the verdict was on account of injuries to the machine, which would leave $1,100.00 as the amount awarded as damages for the injuries to the person of the appellee.

As to the injuries to the person of the latter, we find from the evidence that they consisted not only of contusions or bruises on the head and body, but also, as stated earlier in the opinion, of a cut in one of his legs made by a bolt of the automobile, which penetrated to the bone and made a wound three inches in length. According to the uncontradicted testimony of appellee and his physician, he was confined to his bed or home for two weeks after the accident. He then went on crutches two successive days to his office, following which he was again confined a week to his bed or room, at the end of which time he again went to his office, and continued

to do so, but for three weeks had to use crutches. Appellee further testified that his physical and mental suffering on account of the wound in his leg, from the time of the accident down to the time of the trial, was great, and that he still suffered pain from the wound, and that the use of his leg in standing upon it or walking caused it to swell. This testimony, together with that of his physician, that the wound would probably result in permanent partial disability, makes us reluctant to say that the damages awarded appellee were excessive. We find in the record none of the earmarks that would indicate passion or prejudice on the part of the jury. The verdict in amount reaches the maximum limit, but cannot be declared grossly excessive or glaringly disproportioned to the injuries sustained, and we are not authorized to reverse a judgment on account of excessive damages, in the absence of a showing that the verdict is so grossly excessive as to indicate that it was given under the influence of passion or prejudice. Civil Code, section 340, sub-section 4.

The record discloses no material error in the admission or rejection of evidence. Judgment affirmed.