The CINCINNATI, NEW ORLEANS &
TEXAS PACIFIC RAILWAY
COMPANY, Appellant,

v.

Charles WRIGHT, by Lorna M. Wright,
guardian and Lorna M.
Wright, Appellees.

Supreme Court of Kentucky.

May 7, 1976.

Rehearing Denied Oct. 13, 1976.

R. L. Vincent, Williamstown, Raymond R.
Vincent, Florence, Vincent & Vincent, Wil-

liamstown, Bert T. Combs, Tarrant, Combs, Blackwell & Bullitt, Louisville, V. A. Bradley, Jr., Bradley & Bradley, Georgetown, Hugh O. Skees, Vincent & Skees, Florence, for appellant.

G. Wayne Bridges, Covington, Russel E. Lyons, Coshocton, Ohio, Asa M. Rouse, Walton, for appellees.

STEPHENSON, Justice.

A Boone Circuit Court jury awarded Charles Wright and his wife, Lorna M. Wright, $411,200 for injuries and for loss of consortium resulting from Wright's automobile colliding with a locomotive owned and operated by the appellant railroad company. The railroad company appeals from the judgment entered pursuant to the jury's verdict. We reverse.

The trial court submitted the case to the jury on instructions with interrogatory verdicts. The jury returned one verdict that the railroad company was not negligent in the operation of its train. Another verdict was returned finding that Wright was not negligent in the operation of his motor vehicle.

The jury found the railroad company negligent under Instruction No. 2 and awarded damages.

"INSTRUCTION NO. 2

"It was the duty of the railroad to maintain its right of way in a safe and reasonable condition, and to maintain a suitable and reasonably safe railroad crossing, *including maintenance of so much of a public highway as was on the railroad right of way,* and this duty included the duty to cause a sign board to be placed and constantly maintained at the crossing so as to be easily seen by travelers and not to obstruct travel and shall contain on each side in capital letters at least five (5) inches high the words 'Railroad Crossing.' (Emphasis ours.)

\*    \*    \*    \*    \*    \*

"QUESTION NO. 2: Do you find from the evidence that at the time and place of the collision described in the testimony, the railroad company was negligent under Instruction No. 2, and that such negligence was a direct and proximate cause of the collision and of the injuries to Charles Wright?"

The jury answered "yes."

This instruction was given by the trial court on Wright's alternate theory of the case that the railroad company did not use ordinary care in maintaining its right of way and crossing in that the railroad company failed to remove sand from the highway within its right of way.

We view the legal issue raised by Instruction No. 2 as dispositive of the case and confine ourselves to the proof on this issue.

The accident occurred on a Wednesday in the month of March. Wright, an engineer with Clow Corporation employed at the company's plant in Coshocton, Ohio, was en route from Ohio to the company's plant in a rural area of Boone County. The accident occurred at a railroad crossing on Frogtown Road. In this area, the railroad runs north and south; Frogtown Road runs east and west; and US highway 25 runs north and south roughly parallel to the railroad. From the intersection of US 25 and Frogtown Road, the 24-foot blacktop road is straight and level for approximately 100 feet, then slightly downgrades to the railroad crossing a distance of 150 feet. The road is essentially level at the crossing. The Clow Corporation plant is located on Frogtown Road east of the railroad crossing. On his way to the company plant, Wright proceeded along US 25, turned east on Frogtown Road and proceeded toward the crossing at about 25 to 30 miles per hour. The only eyewitness to the accident testified that Wright slowed down some distance from the crossing, then, when he apparently saw the train, applied his brakes, hit sand that had accumulated on the highway and skidded in the sand. The skid, a distance of 20 to 45 feet, carried his automobile into the side of the locomotive. Because of the serious nature of his injuries, Wright was unable to testify at the trial or give his deposition.

The sand had been spread on the eastbound lane of Frogtown Road west of the

crossing by the Boone County Highway Department on Friday, Saturday or Sunday before the accident on Wednesday. The evidence is not clear as to which day it was done. According to the testimony, for many years sand was routinely spread by the county during and after snows and the accumulation of ice on Frogtown Road. The county never removed the sand from the highway. There had been snow on Friday and the day before which occasioned the spreading of sand. On Wednesday, the day of the accident, the weather was clear and dry, and the surface of Frogtown Road was dry. There is no evidence in the record as to when the snow disappeared.

A track supervisor for the railroad company testified that on his regular inspection of railroad right of way he inspected the area including the Frogtown Road crossing southbound on Monday before the accident and northbound on Tuesday before the accident. He testified he looked for things that might cause accidents between automobiles and trains at crossings and that he saw no sand on the approach to Frogtown Road crossing. The railroad right of way is 100 feet in width, 50 feet on each side of the center of the track.

According to the testimony of several witnesses, there was sand on the eastbound lane of the Frogtown Road for a distance of 200, 100, 50 or 30 feet from the railroad crossing back along the eastbound lane of the road. It is not clear from the evidence the amount of sand that had accumulated, and the testimony on this point characterizes it: "would say quite a bit"; "wouldn't notice sand unless practically on it"; "could not see sand in front of automobile for any distance"; and "sand blends with road, don't believe you can distinguish it as sand instead of a dirty road."

It is in the context of this factual situation that we consider the duty of the railroad company with respect to the sand on Frogtown Road.

Instruction No. 2 imposed upon the railroad company the duty "to maintain its right of way in a safe and reasonable condi-

tion . . . including maintenance of so much of a public highway as was on the right of way . . ."

This instruction is based on Wright's theory of the case that KRS 277.060(2) imposed a statutory duty on the railroad company.

KRS 277.060(2) reads:

"Every railroad company shall restore to its former condition, as near as may be, any private road, highway, street, lane, alley, railroad, canal or watercourse upon or across which it has constructed its road, and shall *maintain* the same in that condition within the right of way of the railroad company. It shall construct suitable road and street crossings for the passage of traffic by putting down planks or other suitable material between and on each side of the rails, the top of which shall be at least as high as the top of the rails." (Emphasis ours.)

█ Assuming *arguendo* that the railroad company did have the duty to remove the sand within its right of way, we are of the opinion that Wright has not presented a submissible jury issue on that duty. With this duty imposed upon the railroad company, it was essential for Wright to prove that the railroad company knew, or by the exercise of ordinary care should have known, of this condition. This essential element of proof is required when the condition is created by someone other than the possessor of the premises. We view the situation here as analogous to those situations presented in "slip and fall" cases. *Wiggins v. Scruggs*, Ky., 442 S.W.2d 581 (1969), and *Cumberland College v. Gaines*, Ky., 432 S.W.2d 650 (1968). This is a slippery analogy in the sense that "slip and fall" cases involve situations where the possessor of the premises has control thereof. We do not believe that a railroad company has the same degree of control, if any at all, over a public highway constructed on the railroad right of way. Here the county highway department spread sand on a snow on the railroad company right of way Friday, Saturday, or Sunday preceding the accident on Wednesday morning. There is no evidence, direct or circumstantial, from which we

could draw an inference as to when the snow melted and left the road in a dry condition as it was on Wednesday morning. One witness testified that he saw sand prior to the accident but does not specify the time. Another witness testified that he observed the sand the morning of the accident. The railroad company supervisor, who inspected the tracks, made his inspection southbound on Monday and northbound on Tuesday. He testified that he had made no entries in his notes on either day with reference to any condition on the crossing and that the crossing was in "good shape." He further testified that he would have noticed any appreciable accumulation of sand on the crossing and that he did not see any. We observe that this witness was not testifying about the condition of all that portion of the highway within the right of way. It is clear that so long as the snow remained on all or part of the road, there would be no duty to remove the sand by any test. We cannot speculate as to when the snow disappeared and the road became dry and the duty to remove came into being. There is no proof that the railroad company had notice of the condition, or that the condition could have been discovered in the exercise of ordinary care. This rule was applied in a railroad crossing case, *Louisville & N.R. Co. v. Bell*, 276 Ky. 778, 125 S.W.2d 239 (1939). The court said at page 241:

". . . [T]he company could not be held liable for resulting injuries unless it had been shown that through its proper agents it knew of that defective condition, or by the exercise of ordinary care, such as its continued existence, it should have known of it."

In summary to make out a case for the jury, it was incumbent on Wright to introduce evidence, direct or circumstantial, that the railroad company knew of the condition or could have discovered the condition in the exercise of ordinary care (the condition coming into being with the disappearance of the snow).

Even though this case may be disposed of on the above ground, we are not inclined to leave the question of a statutory duty on the railroad company in these circumstances to another day.

We regard that portion of Instruction No. 2 which recited the duty of the railroad company to cause a signboard to be placed and mounted at the crossing as superfluous. There is no question about the signboard's being in place and no serious argument that the cause of the accident was other than the sand on the highway.

It is clear that the verdict of the jury was based on that portion of Instruction No. 2 which imposed upon the railroad company the duty to maintain the highway within the right of way in a safe and a reasonable condition. We are of the opinion that in this respect the trial court was in error. We do not find either a common law or a statutory duty on the railroad company to maintain that portion of the highway within its right of way other than the crossing and approaches necessary to the permanent roadbed in situations where the railroad company has not constructed its road across an existing highway or street. The duty imposed on the railroad company by KRS 277.060(2) clearly applies only to those situations. Here, according to the evidence and an exhibit (the maintenance contract between the county and the railroad) the county constructed the highway across existing railroad company tracks; so, the statute has no application here. We find KRS 277.060(2) merely a codification of the common law rule regarding the railroad company's duty where the tracks are constructed over existing highways and streets. The then statutory duty and notations of the common law rule are found in *Louisville & I. R. Co. v. Speckman*, 169 Ky. 385, 183 S.W. 915 (1916). There the railroad company, after receiving permission to construct its tracks across a public road, constructed a stone wall as support for a fill for the crossing and approach to the crossing so that for a distance of 15 or 18 feet the fill constituted a highway for the public and a roadbed for the track of the railroad company. Liability was im-

posed when the stone wall gave way under an automobile approaching the crossing. The public road had been restored to its former condition as near as could be, and we note that the railroad right of way acquired was limited to the space between the rails and 3 feet on either side.

The statute in effect at that time required the railroad to restore the highway to its former condition as near as may be. There was no specific duty to maintain, but this court reasoned that the duty to maintain the approach and crossing in proper condition followed for the reason that the county highway employees were unskilled in the work of maintaining railroad crossings and approaches thereto, and they could not reasonably determine the requirements of a fill to support the roadbed of the railroad company.

The opinion stands for the proposition that a railroad company when constructing its tracks over a public highway has the responsibility for maintaining fills, structures and slopes incident to the construction in a safe condition for the travelling public. Maintain is used in the context of safe structural condition and not in the sense of day-to-day maintenance of the surface of the public road.

In *Louisville Ry. Co. v. Jackey*, 237 Ky. 125, 35 S.W.2d 28 (1930), the railroad company's tracks crossed a city sidewalk. Whether the tracks were constructed over the street is not mentioned or considered in the opinion, but we infer from the following quote that the railway company built over an existing sidewalk. The plaintiff sued for injuries sustained from a fall after stepping in a hole in the sidewalk and tripping over a rail. There it was said:

"As to the care required to keep this sidewalk in a reasonably safe condition for use by pedestrians, the duty of the city extends to the whole of the sidewalk and every part of and place on it, while the duty of the railway company is confined solely to defects therein *resulting from its servitude thereon.* . . . If this defect resulted from, existed at, or in whole or in part consisted of, the servi-

tude maintained across this sidewalk by the railway company, then, if the railway company and the city knew or by the exercise of ordinary care could have known of it long enough to have repaired it, both the railway company and the city are, or such one as had, or by the exercise of ordinary care could have had, timely notice thereof, is responsible therefor." (Emphasis added.)

See also *Chesapeake & O. R. Co. v. Pope*, 296 Ky. 254, 176 S.W.2d 876 (1944).

We are urged by Wright to consider the "width of right of way" cases cited in his brief. We have examined these cases, which include *Speckman* and *Pope*, and conclude that none of them applies to the situation here. The factual situations presented in *Paducah and Elizabethtown R.R. Co. v. Commonwealth*, 80 Ky. 147 (1882), *Commonwealth v. Louisville & N.R. Co.*, 109 Ky. 59, 58 S.W. 478 (1900), and *Louisville & N.R. Co. v. Muncey*, 229 Ky. 538, 17 S.W.2d 422 (1928), are not, in our opinion, relevant to the instant case. The language contained therein inferring that the railroad company had a duty to maintain the entire right of way does not represent the narrow holding in each case and is not considered to be authority for the position taken by Wright. The other cases cited on this proposition do not apply in any respect.

■ We agree with the "safe crossing" cases cited by Wright. The common law duty of a railroad company to maintain a safe crossing for the convenience and safety of the travelling public is not the issue here. The difficulty arises when Wright urges us to extend this duty to the entire width of the right of way. We construe that portion of KRS 277.060(2) that reads "shall maintain the same in that condition within the right of way of the railroad" to apply to the construction performed by the railroad, and this language does not include ordinary maintenance of the highway surface outside of the crossing and its immediate approaches.

■ There is nothing here to show that the railroad track was constructed over the

highway. An exhibit shows that in 1967 the county entered into an agreement with the railroad company to widen the county road. We are of the opinion that the railroad company does not have a duty to perform ordinary maintenance on the highway within its right of way outside of the immediate area of the crossing.

We hold in the factual situation presented here that there was no duty on the part of the railroad to remove the sand on that portion of the highway within its right of way, particularly where the county highway department placed the sand there on snow and ice for the safety of the travelling public.

The judgment is reversed with directions to sustain appellant's motion for judgment n.o.v.

REED, C. J., and JONES, LUKOWSKY, PALMORE, STERNBERG and STEPHENSON, JJ., concur.

CLAYTON, J., dissents.

CLAYTON, Justice (dissenting).

I respectfully dissent from the majority opinion. I do not construe KRS 277.060(2), which contains the duty of railroad companies to maintain roadways within the railroad right-of-way, as applicable only to the railroad roadbed and the immediate area of the roadbed or only to situations where a railroad is constructed over an existing highway. I feel this statutory duty applies to the *entire* right-of-way and this application exists regardless of which was there first, the highway or the railroad.

The railroad company clearly recognized its duty to maintain safe tracks and crossings. A supervisor was employed to make frequent inspections of tracks and all crossings and, in fact, had observed the Frogtown Road crossing on the Monday and Tuesday preceding the accident on Wednesday. By virtue of this fact, the railroad company not only could have but should have discovered the dangerous condition represented by the accumulation of sand.

The following quoted language as cited in this court's opinion in *Louisville & I. R. Co. v. Speckman*, 169 Ky. 385, 183 S.W. 915, 919 (1916) clearly expresses my view of the manner in which cases of this type should be viewed:

> " 'As a general rule, it is the duty of a railroad company, both by virtue of statute, and under the principles of common law, to use reasonable care to so construct and maintain in good repair crossings and approaches over all public streets and highways intersecting the line of its road that they will be reasonably safe and convenient for the usual and ordinary purposes of the public; and its failure to do so renders it liable to one who is injured by reason thereof while making a proper, reasonable, and necessary use of the crossing . . . .' "

There was ample evidence presented in the instant case to support the findings of the jury and I am not inclined to overturn its verdict.

I would, therefore, affirm the judgment.