CASE 84.—PROSECUTION AGAINST THE CINCINNATI, NEW
ORLEANS & TEXAS PACIFIC RAILWAY COMPANY
FOR MAINTAINING A PUBLIC NUISANCE.—October
16.

# Cincinnati, N. O. & T. P. Ry. Co. v. Commonwealth

Appeal from Mercer Circuit Court.

W. C. Bell, Circuit Judge.

Defendant convicted and appeals. Reversed.

1. Railroads—Operation—Regulations—Violations—Indictment.—
An indictment charging a railroad company with running
its trains through an incorporated town at an unreasonable
rate of speed and without the customary warning signal
charges a public nuisance.

2. Same.—To find a railroad company guilty of committing a
public nuisance by running its trains through an incorporated
town at an unsafe rate of speed, without signals at a cross-
ing therein, it is necessary, not only to prove an habitual
rapid running of the trains, but also that such running was
without necessary warnings to avoid injuring those using the
crossing.

3. Same—Negligence.—The rapid running of a train over the
streets or crossings of a town, which will render unavailing
signals that may have been given of its approach, is evidence
of negligence, entitling a person injured thereby to recover
damages.

4. Same—Municipal Corporations—Police Power—Regulation of
Trains.—Ky. Stats. 1903, section 786, requiring every railroad
company to sound the whistle and ring the bell outside of
incorporated cities at least 50 rods from a crossing, and to
give such signals in cities as the legislative authorities
thereof may require, confers on municipalities the exclusive
power to determine by ordinance what signals shall be given
therein by trains running through their corporate limits,
whether on the streets or crossings.

Cincinnati, N. C. & T. P. Ry. Co. v. Commonwealth.

5. Same.—Under Ky. Stats. 1903, section 3074, authorizing towns of the sixth class to enact police regulations not conflicting with the general laws, a town of the sixth class may require a railroad company to use such reasonable precautions as to the speed of its trains in approaching a crossing or passing through its limits as may be needful for the safety of the public.

6. Same—Evidence—Admissibility.—Where, on a trial of a railroad company for committing a public nuisance by running its trains through an incorporated town at an unsafe speed without giving warning at public crossings, the evidence showed that it stationed a watchman at a crossing, it was proper, as bearing on its good faith, to show that it placed the watchman there pursuant to a requirement of the railroad commissioners, though the commissioners exceeded their authority.

7. Same—Evidence—Sufficiency.—On a trial of a railroad company for committing a public nuisance by running its trains through an incorporated town at an unsafe speed without giving warning at a crossing, evidence held to require an acquittal, though the trains were run at an unreasonable rate of speed.

E. H. GAITHER, attorney for appellant.

JOHN GALVIN, of counsel.

### THE LAW.

That a railroad company has the right in this state to run its trains at any reasonable rate of speed is the settled law of the state. (Louisville, Cincinnati & Lexington Railway Company v. the Commonwealth, 80 Ky. 143.) But, as a protection to the traveling public, the company is required to give the warning signals.

It is not contended by the commonwealth in this indictment that the rate of speed in any way contributed to the danger. The danger consisted in a failure to give proper warnings. It is not denied,' in fact it is admitted, that every precaution prescribed by the legislature, has been observed by the appellant, and we submit that the delegation by the legislature of a right to the railroad commissioners to determine what precautions are necessary for the public safety, coupled with the statute prescribing exactly the signals required at crossings is an exact determination of the company's duties, and that no jury has the

right to either increase or diminish these requirements. We submit that the appellant has violated no law, and that the verdict and judgment in this case is illegal and unwarranted, and we respectfully ask a reversal.

### AUTHORITIES CITED.

Kentucky Statutes, section 786; Kentucky Statutes, section 774; Louisville, Cincinnati & Lexington Railway Co. v. Commonwealth, 80 Ky. 143.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee.

"To secure the reasonable and proper use and enjoyment of the public road by the public and of the railroad by its owners, each must be required to observe the maxim of law that every person is restricted against using his property to the prejudice of others." (Cin. R. R. Co. v| Commonwealth, 80 Ky. 137.)

OPINION OF THE COURT BY ·JUDGE SETTLE—
Reversing.

This appeal is prosecuted from a judgment entered by the court below upon the verdict of a jury finding appellant guilty of committing a public nuisance and fixing its punishment at a fine of $500. The indictment under which the trial was had specifically charges that appellant did "unlawfully, willfully, habitually, and for an unreasonable length of time run its trains at an unsafe and unreasonable rate of speed and so rapidly as to endanger and hazard the safety and life of persons traveling upon the turnpike leading from Harrodsburg to and through Burgin, which was and is a public highway, at a point where said railroad crosses said pike in Burgin, an incorporated town, and at a point where there is much travel in buggies and vehicles and by pedestrians, and this without sufficient and necessary warning to prevent the danger, hazard, and inconveni-

ence to public travel.'' Appellant filed a demurrer to the indictment, which was overruled, as was its motion for a peremptory instruction, made at the conclusion of the Commonwealth's testimony, and motion for a new trial following the verdict and judgment.

According to the evidence Burgin is a town of the sixth class, with a population of about 1,000. Appellant's road runs through it north and south, and the turnpike mentioned in the indictment is its principal thoroughfare or street, and the only one of the town crossing the railroad. The Burgin post office, school, and churches, as well as its principal business houses, are situated east of the railroad, and its main residence section west thereof. There is a large amount of travel over the crossing during the day, but the night travel is less than a third as great. Each day and night several of appellant's fast trains, both passenger and freight, pass through Burgin without stopping. At and near the crossing are numerous side tracks, which are often occupied by empty or loaded freight cars, both day and night; and when this is the case it is difficult for persons approaching the crossing to see appellant's trains coming from the south. According to the Commonwealth's evidence appellant's through trains usually pass Burgin at a speed of 40 to 70 miles an hour. On the other hand, appellant's testimony was to the effect that these trains ran through the town at 25 to 50 miles an hour. The Commonwealth's testimony also showed that a watchman was kept at the crossing by appellant from 6 a. m. to 6 p. m. each day, but wholly failed to show that the trains of appellant, in approaching and passing through Burgin, did not give the usual and proper signals, while that of appellant showed that such signals were invariably given; and

there was no contrariety of evidence as to the further fact that no one had ever been injured at or near the crossing by appellant's manner of operating its trains.

Appellant's complaint of the trial court's action in overruling its demurrer to the indictment cannot be sustained. If, as charged in the indictment, appellant willfully, habitually, and for an unreasonable length of time ran its trains through Burgin at such a rapid, unreasonable, and unsafe rate of speed as to endanger the lives or safety of persons using the crossing, and this, as in substance further alleged, was habitually done without the customary and necessary warning signals of their approach, these acts were suffifficient to constitute the offense charged. In Louisville, Cincinnati & Lexington Railroad Company v. Commonwealth, 80 Ky. 143, 3 Ky. Law Rep. 644, 44 Am. Rep. 468, an indictment for a common-law nuisance, charged to have been committed by appellant at a crossing of the turnpike and its railroad by "habitually running its trains at an unsafe and unreasonable rate of speed, and so rapidly as to endanger, hazard, and injure persons traveling upon the turnpike, without giving warning signals or taking precautions to avoid injuring such persons by approaching trains," was held to sufficiently state a public offense. As in language and meaning the indictment in the case at bar is substantially the same as that of the case supra, we are constrained to hold that the demurrer to it was properly overruled.

We are of opinion, however, that the evidence introduced by the Commonwealth in this case did not warrant a conviction; for, in order to find appellant guilty of the offense charged, it was necessary, not only that it should have proved such habitually rapid

running of its trains by appellant as was reasonably calculated to endanger or injure persons using the crossing, but also that such running of its trains was without the necessary warning signals or other precautions to avoid injuring those using the crossing. According to the evidence appellant's trains, in approaching the Burgin crossing, always gave the customary statutory signals, in addition to which appellant took the precaution to keep a watchman at the crossing from 6 a. m. to 6 p. m. each day. This view of the law was adopted by the court in L., C. & L. R. R. Co. v. Commonwealth, supra. The opinion, after stating the facts as to the character of the crossing in that case, the obstructions near it, its large and constant use by the traveling public, and the speed at which the railroad company ran its trains in approaching it, proceeds to say: "This evidence clearly establishes the fact that the safety of the numerous persons passing over the crossing requires that warning signal should be given of the approach of trains. The jury by their verdict in effect found that appellant habitually failed to give such signals, and, as they were necessary to the safety of the public from danger of approaching trains, the appellant was legally convicted, unless the finding of the jury is without evidence to support it. There is evidence of the failure to give any warning signals on several occasions, and the testimony introduced by appellant to establish the custom of ringing the bell or sounding the whistle on the approach of trains to the crossing does not show that such signals were universally given, and it lacks some of the elements of certainty." L. & N. R. R. Co. v. Commonwealth, 13 Bush 390.

We have in this State no statute regulating the rate of speed at which railroads shall operate their

trains, and while, in civil actions brought by persons
for injuries resulting from the alleged negligence of
railroad companies, this court has time and again
held that such rapid running of a train over the
streets or crossings of a town or city as would render
unavailing signals that may have been given of its
approach was such evidence of negligence as would
entitle the person injured thereby to recover damages,
it has never undertaken to fix a rate of speed
at which trains should be operated in towns or cities,
and manifestly could not do so, in the absence of a
statute or ordinance authorizing it. Its rulings have
gone no further, therefore, than to decide whether
the facts of such cases as were brought to it for review
did or did not show negligence. The rule announced
by this court in civil actions for injuries
alleged to have been received on the streets or crossings
of a town or city through the negligence of those
operating railroad trains is that greater care should
be used in running trains on the streets or crossings
of a town or city than is required to be exercised in
approaching highway crossings in the country, because
of the larger amount of travel and constant
presence of persons on the streets and crossings.
Under such circumstances, in addition to giving and
continuing the customary signals and keeping a constant
lookout, the trainmen should reduce the speed
of the train, so as to lessen the danger of injury to
persons on the street or crossing from its movements.
McCabe's Adm'x v. Maysville & Big Sandy Ry. Co.,
89 S. W. 683, 28 Ky. Law Rep. 536. On the other
hand, the rule as to the degree of care to be used
by those in charge of a train in approaching a country
crossing is, not that the speed of the train be slackened,
but that, where the speed of the train is great,

care in giving warning of its approach to the cross-
ing should be commensurate with the danger to be
avoided.   L. & N. R. R. Co. v. Molloy's Adm'x, 28
Ky. Law Rep. 1113, 91 .S W. 685, 122 Ky. 219.

    But, in order to sustain a penal prosecution against
a railroad company for running its trains in city or
country at a high or even dangerous rate of speed,
either upon a street or in approaching a crossing,
it must be shown that such running of the trains was
attended with a failure on the part of those operat-
ing them to give the necessary and usual signals of
their coming.   Section 186, Ky. Stats. 1903, provides:
"Every (railroad) company shall provide each loco-
motive engine passing upon its road with a bell of
ordinary size and steam whistle, and each bell shall
be rung, or whistle sounded outside of incorporated
cities and towns of a distance of at least fifty rods
from the place where the road crosses upon the same
level any highway or crossing, at which a signboard
is required to be maintained, and such bell shall be
rung or whistle sounded, continuously or alternately,
until the engine has reached such highway crossing,
and shall give such signals in cities and towns as the
legislative authorities thereof may require."   It will
be observed that the last clause of section 786 confers
upon the legislative authorities of all cities and towns
of the Commonwealth the exclusive power to deter-
mine and by ordinance declare what signals shall
be given therein by trains running through their cor-
porate limits, whether upon the streets or crossings.
In Chesapeake & Ohio Railway Company v. City of
Maysville, 69 S. W. 728, 24 Ky. Law Rep. 615, the
validity of an ordinance of the appellee city com-
pelling the appellant railway company to erect and
maintain gates at certain crossings in the city was

attacked upon the ground that it was unconstitutional and its enforcement would amount to usurpation on the part of the city of power vested by law in the railroad commissioners and which could be exercised by them alone. Both contentions were rejected by this court; the opinion declaring that the charter of Maysville, a city of the fourth class, expressly authorized the enactment of the ordinance, and, in addition, that section 774, Ky. Stats. 1903, under which the power in question was claimed for the railroad commissioners, only authorized them to compel the erection and maintenance of gates at highway crossings within a mile of the corporate limits of any city or town of this Commonwealth.

Not only may the town of Burgin, under the power conferred by section 786 of the Statutes, supra, by ordinance require appellant to adopt such signals as may be reasonably necessary to give warning of the approach of its trains to the crossing in question, but it may require of it such other reasonable precautions as to the speed of the trains in approaching the crossing or passing through the corporate limits of the town as may be needful for the safety of the public; for a town of the sixth class, like Burgin, is by the provisions of subsection 7, section 3704, Ky. Stats. 1903, empowered through its board of trustees "to　*　*　* enact and enforce within the limits of said town all other local, police, sanitary and other regulations as do not conflict with the general laws." While, in requiring appellant to keep a watchman at the Burgin crossing, the railroad commissioners may have transcended their authority, it was a precaution which inured to the benefit of the citizens of that town. The testimony as to the stationing of the watchman at the crossing and the

purpose thereof having properly been admitted by the court, we do not think it would have been improper to admit the testimony offered by appellant to the effect that in placing the watchman at the crossing it acted upon a suggestion or requirement of the railroad commissioners, as it tended to show appellant's good faith in attempting to protect persons using the crossing against the dangers arising from the passing of its trains. We do not mean to say that appellant should have been acquitted because of the failure of Burgin's board of trustees to adopt an ordinance with respect to the signals to be given by appellant's trains in approaching the crossing, or running through the town; but as, according to the evidence, appellant's trains in approaching the Burgin crossing universally gave the warning signals required by statute in respect to crossings outside of incorporated towns and cities, and in addition kept a watchman at the crossing each day during the hours mainly devoted to travel on the turnpike and crossing, these facts, in the absence of an ordinance of the town of Burgin requiring other than the statutory warning signals from appellant's trains in approaching the crossing, entitled appellant, notwithstanding the fast running of its trains, to an acquittal at the hands of the jury. We are of opinion, therefore, that the trial court, after the introduction of all the testimony, should have peremptorily instructed the jury to find appellant not guilty.

For the reasons indicated, the judgment is reversed, and case remanded for a new trial and other necessary proceedings consistent with the opinion.