## Louisville & Nashville Railroad Company et al. v. Muncey.

(Decided December 18, 1928.)

(As Modified, on Denial of Rehearing, June 11, 1929.)

540

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, JESSE MORGAN, J. K. P. TURNER and J. WALTON CRAFT for appellants.

W. A. STANFILL for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The Louisville & Nashville Railroad Company laid its tracks through the City of Hazard on the west side of the North fork of the Kentucky river in 1912. It appears that there was a roadway, or passway, paralleling the tracks and passing under the tracks after the rails were laid, through an underpass constructed by the railroad at the time. There was a ferry across the river in the town of Hazard. The main part of the town was on the east side of the river. Not far from the river was High street on the east side.

In the year 1921 the railroad company became interested in the erection of a Y. M. C. A. building for the benefit of its employees in the city of Hazard. It had tentatively selected a site on Tantrough branch, on the west side of the river; but the citizens of Hazard importuned the railroad company to erect the building on the east side, in the main part of the town. The railroad company would not consider the erection of the building on the east side of the river, unless the city would see to

it that a bridge was constructed across the river for the use of the employees of the railroad company and the public generally. The yards and shops of the railroad company were located on the west side of the river, and, in addition to the main line, several tracks were laid for switching purposes.

After negotiations, oral and written, between the railroad company and the city of Hazard, the city finally agreed that a bridge should be constructed across the river. The city agreed to pay one-third of the cost, the citizens in the town agreed to contribute one-third, and the employees of the railroad company agreed to contribute one-third. The city procured an engineer, who submitted plans for the bridge. The plans as originally submitted contemplated the erection of a bridge across the river, with a landing on the west side between the river and the railroad tracks. This plan was objected to by the officials of the railroad company, and it was suggested that the bridge should be extended above the railroad tracks on the west side of the river, and that the landing should be near the edge of the highway paralleling the tracks, which was about 20 feet above the tracks. Plans and specifications were redrafted to conform to the suggestion of the railroad company, and the bridge was constructed in accordance with these plans under a contract let by the city of Hazard. It was a footbridge, with a pier on each side of the river, and two paralleling strands of heavy wire forming the support on each side, the wires being connected with stay rods for the support of the floor of the bridge.

It appears from the testimony that the bridge was kept in repair by the employees of the railroad company under an arrangement or contract with the city whereby the city was to pay for the work done. Early in 1926 the railroad company advised the city of Hazard that an inspection by one of its engineers disclosed that the bridge was out of repair, and that it needed painting, as well as the substitution of stay rods for those which were broken. The city authorized the railroad company to make the repairs, which were made and paid for by the city. Later in the same year it developed that there were additional broken stay rods, and the railroad company suggested that the city should have the bridge thoroughly inspected and put in good condition. It suggested at the same time that the city should give it continuing authority to make repairs to the bridge at the expense of the

city, which authority was granted. In October, 1926, some of the stay rods gave way, and about 30 feet of the flooring of the bridge fell through. It is not clear whether the bridge was then repaired by the railroad company; but it was repaired, and the use thereof continued.

About a month after some of the flooring fell through, the appellee was crossing the bridge, and while he was over the tracks of the railroad company a stay rod gave way, with the result that some of the flooring fell out, and he fell through onto the tracks below. He instituted this suit against both the city and railroad company to recover for the injuries which he received, and the trial resulted in a verdict in his favor against the city and the company for $5,875.

It is clear that the railroad company did not construct the bridge, and that it only made repairs on the bridge pursuant to authority received from the city. Its contention is that it is not responsible for the accident, because the bridge was a highway of the city, connecting two other highways of the city. It was the duty of the city, so the railroad company contends, to keep the bridge in repair, and that it cannot be held responsible for the negligence of the city, and for that reason it is not liable to appellee for damages sustained by him growing out of his injury.

The city of Hazard seems to take the position that the railroad company alone is responsible, if any one is responsible, for the injuries to appellee, because the bridge was a highway crossing its right of way, and that it was the duty of the railroad company to keep in repair any highway crossing its right of way.

The appellee contends that the city is responsible to him, because the bridge was one of the public ways of the city, and that it was incumbent on the city to keep the bridge in a proper state of repair, and he further contends that the railroad company is responsible to him because of subsection 5 of section 768, Ky. Stats., which makes it the duty of the railroad company to maintain and keep in repair its crossings.

The railroad company relies on these grounds for reversal: Its demurrer should have been sustained to the petition, a peremptory instruction should have been given in its favor, incompetent evidence was admitted over its objection, and the instructions were erroneous.

These grounds are all based upon the contention of the railroad company that it cannot be held liable to appellee for the injury which he received growing out of his falling through the bridge. It contends that it had nothing to do with the bridge, and was under no obligation to maintain it, and that the fact that it was across its right of way did not make it incumbent upon the railroad company to keep it in repair. Whether the bridge was there or not was all one to the railroad company, if its contention is sound.

It is contended that, the city of Hazard having constructed the bridge for the use of the traveling public, it was thereby constituted and established as one of the public ways in the city. We agree that such was the effect of the construction of the bridge. City of Louisville v. Bott's Adm'r, 151 Ky. 578, 152 S. W. 529; City of Louisville v. Hall, 91 S. W. 1133, 28 Ky. Law Rep. 1064; Terrell v. Hart, 90 S. W. 953, 28 Ky. Law Rep. 901.

It is further insisted that the duty of maintaining the bridge in a reasonably safe condition for public travel rested upon the city of Hazard alone, and that such duty was nondelegable. This contention is based on the opinions of this court holding that a traveler, who is hurt solely on account of a public way's falling into a state of disrepair, may not sue the abutting property owner, although there may be an ordinance requiring the abutting property owner to keep the sidewalk in repair. The leading case on that question is City of Ashland v. Vansant-Kitchen Lumber Co., 213 Ky. 518, 281 S. W. 503. That case holds, as had previously been held, that the duty in such cases is imposed upon the city to see that its streets are kept in a reasonably safe condition for public travel, and that a city may not delegate that duty to another, and thereby escape liability for injuries caused by a failure to keep a street in safe condition for public travel. We cannot agree that the railroad company should escape liability under the authority of these opinions. The opinions are sound, when applied to a proper state of facts, but we have quite a different question for consideration.

The record in this case appears to show that the city had no title to the land on either side of the river at the landing point of the bridge, or where the approaches to the bridge were located. In fact, the bridge was not located on property belonging to the city of Hazard, and

the city had no authority, in writing at least, to erect the bridge across the right of way of the railroad company. The acts of the railroad company in consenting to the construction of the bridge by the city amounted to a dedication, and, the city having accepted the dedication, the bridge is a public way of the city.

We have, then, a state of facts showing that the bridge was constructed by the city of Hazard for the purpose of connecting one public way of the city with another public way, and that, in so connecting these two public ways, the connecting public way, with consent of the railroad company, crossed its right of way about 30 feet above the surface of the earth. That the city of Hazard was under the duty to keep the bridge in reasonably safe condition for public travel may not be disputed. But the question confronting us is whether the railroad company was also under a duty to see that the bridge was maintained in a reasonably safe condition for public travel, because it was a public crossing. It seems to be conceded, and we believe there could not well be any dispute about the matter, that, if the crossing was a grade crossing, that is, if it crossed on the ground, the railroad company would be under the obligation to see to it that it was kept reasonably safe for the traveling public. This would be true, whether the crossing existed when the railroad was built, or was thereafter established.

There being no disagreement about this point, we will not take up time to discuss it, further than to say that the doctrine that a railroad company must maintain a crossing was established in the case of Paducah & Elizabethtown Railway Co. v. Com., 80 Ky. 147. That was a case where the railroad company laid its tracks across a public highway, and the court held that in such a case the railroad company became responsible to the public and individuals for injuries resulting from a failure to repair the crossing, or to keep it in reasonably safe condition for the traveling public. It was further held in that case that the duty of maintaining the crossing could not well be imposed on the overseers of highways, because such overseers should not be required to enter the space covered by the right of way of the railroad, uncontrolled by it, for the purpose of repairing the crossing or the approaches to it. The duty of maintaining in reasonably safe condition public crossings was squarely placed on railroad companies by that opinion, and it has been followed consistently down to the present time. Ever since then it has been held that, when a railroad company lays

its tracks over a public highway, it is necessary that the company shall have paramount control over the tracks and the right to regulate repairs necessary to the use of the public crossings, and for these reasons it is responsible to the public for a failure to keep such crossings in repair. That case dealt with a crossing existing at the time the railroad company laid its tracks. But in the case of Com. v. L. & N. R. R. Co., 109 Ky. 59, 58 S. W. 478, this court held that it made no difference whether the highway or the railroad was first established; the duty was on the railroad to maintain it in a reasonably safe condition in either event.

The railroad company contends that under the provisions of subsection 5 of section 768, Ky. Stats., it was only required to restore the crossing to its former condition as nearly as was reasonably possible, and that it did this by providing an underpass when it laid its tracks. This seems to be conceded, and, if nothing else had happened thereafter, the railroad company was under the duty only to maintain the underpass in a reasonably safe condition. The bridge was constructed after the underpass was provided, and it is a public crossing constructed with the consent of the railroad company, and it constituted a new crossing of its right of way. This was not a crossing forced upon it, but was a crossing made with its acquiescence, and under its advice, and with its approval. The question reduces itself to whether the railroad company may be relieved from all duty relating to the maintenance of a crossing which crosses its tracks above its right of way.

It is contended that the reasons for the maintenance by the railroad do not exist in such a crossing as in a grade crossing, because the crossing cannot in any way interfere with the operation of the railroad company. This does not seem to be sound. An unsubstantial bridge above a railroad track might prove as dangerous to traffic as a grade crossing. If the railroad company may not delegate to the county or city authorities the duty to maintain a grade crossing, may it delegate that duty when the crossing is overhead? It so contends and relies on the case of L. & N. R. R. Co. v. Com., 130 Ky. 432, 113 S. W. 517. In that case the railroad company had been indicted for maintaining a nuisance by suffering one of its bridges to remain out of repair. This court held that the indictment in no way connected the railroad company with the bridge alleged to have been allowed to become unsafe, other than by the recitation that it suffered and

permitted ''its bridge'' to become and remain out of repair and dangerous. It was recited in the opinion that the indictment did not charge that there was any duty on the part of the railroad company to repair or maintain the bridge for the benefit of the public, although the indictment charged that the bridge constituted a part of a public highway. The court held nothing more in that case than that, in the absence of any allegation showing a duty on the part of the railroad company to keep the bridge in repair, it must be presumed that the duty rested on the county. We find no authority in that case which excuses the railroad company from maintaining an overhead crossing constructed with its consent which belongs to a municipality.

The railroad company relies on the case of Blue Grass Traction Co. v. Grover, 135 Ky. 685, 123 S. W. 264, 135 Am. St. Rep. 498. That was a case where Fayette county made a contract with the traction company to keep in repair a bridge over the right of way of the Cincinnati, New Orleans & Texas Pacific Railway Company. The railway company was a party to the contract. A horse was injured while crossing the bridge by reason of a defect in the bridge. The litigation was between the traction company and Grover. The railroad company was not a party to the action. Under the contract it was the duty of the traction company to maintain the bridge for Fayette county. The substance of the opinion is that, as Fayette county could not be held responsible for the damage done to the horse, the agent with which it had contracted to maintain the bridge could not be held responsible. The court held that the fact that the bridge was over the track of the railroad company in no way affected the liability of the traction company.

It is true the court in the course of the opinion used this language: ''The railroad company was not required to build the bridge. It did not build it, and, if Fayette county had built this bridge over the railroad track, the railroad company would have been in no wise responsible to Grover, if Fayette county had allowed it to get out of repair.'' What was said by the court in the language quoted had nothing to do with the decision of the case. The railroad company was not a party to the action, and it was wholly immaterial to the decision of that case whether the railroad company was responsible to Grover, as that was not involved in any way in the action. However, the court was thinking along the line that the county

could not be held responsible, and, as the county had constructed the bridge, it was its primary duty to maintain it, and that an agent of the county, who had agreed to maintain the bridge, could not be held responsible because the county could not be held responsible. In the instant case the city built the bridge, and it is unlike a county, in that it can be held responsible for a failure to properly maintain it.

The railroad company relies on the case of L. & N. R. R. Co. v. Hopkins County et al., 153 Ky. 718, 156 S. W. 379. In that case the county sought to establish a new road, which would cross the right of way of the railroad company at a point where it passed through a cut 22 feet deep. It was admitted that there could be no grade crossing at this point, and the county sought to condemn a right of way crossing the railroad tracks 22 feet overhead. The trial in the lower court resulted in an order establishing the road and compelling the railroad company to construct and maintain an overhead bridge. The railroad company contended that the county had no such right, and this court sustained the contention, and held that the county could do no more than to compel the railroad company to establish and maintain a grade crossing, and that it could not compel the railroad company to construct and maintain an overhead crossing at great expense, as was required by the judgment of the lower court. It was held that there was no statutory authority sufficient to authorize the county to exercise its police power to the extent of requiring a railroad company to construct and maintain an overhead bridge.

The instant case does not present a similar state of facts. The railroad company did not resist the establishment of the overhead crossing, but consented to it, and there was no effort to compel it to construct the bridge at its own expense, or to maintain it. The case last cited, therefore, falls short of holding that a railroad company is not under the duty to maintain such a bridge, when it is constructed with its consent across its right of way. Neither does the case hold that it is only the duty of the railroad company under the statute, supra, to maintain in reasonably safe condition a grade crossing.

The railroad company had several hundred employees on the west side of the river, working at its shops and in its offices. The location of the Y. M. C. A. building on the east side of the river made it necessary to provide an easy way for these employees to pass from one

side of the river to the other. There was a ford when the river was low, and a ferry at other times, used for crossing the river; but this was not satisfactory to the railroad company, and it would not locate the Y. M. C. A. building in the main part of the town unless the city should construct the bridge. The bridge was largely for the convenience of the employees of the railroad company, and doubtless it was for that reason that the railroad company insisted that, as a prerequisite to the erection of the building on the east side of the river, the city must erect and maintain a bridge. While there was no contract with the railroad company for erection of the bridge, there was a mutual agreement and understanding between the railroad company and the city whereby the railroad company should maintain the bridge, the city paying the expenses.

The appellee relies upon the case of Illinois Central Railroad Co. v. Com., 138 Ky. 742, 129 S. W. 94, as supporting his contention that it is the duty of a railroad company to maintain an overhead crossing. That was a case where the railroad company was indicted for suffering a common nuisance to be and remain upon its property. The defense in that case was that the indictment was defective, and further that there was a failure of evidence to show that the bridge in question was upon the railroad company's right of way. The bridge was in the town of Wingo, in Graves county, and was known as the Lebanon street crossing. One end of the bridge rested a few inches from the ties supporting the rails, and the other end rested on an embankment in the edge of the street on the other side of the ditch. It was contended in that case that it was the duty of the town to maintain the bridge; but this court held that the fact that it was built by the town, or that the town formerly maintained it, was not material, if it was upon the right of way of the railroad company. This court held that, although the town may have voluntarily or in ignorance of its rights built and maintained the bridge, yet that fact did not absolve the railroad company from the duty to keep the bridge in proper condition for public travel, if it was upon its right of way.

The court rested its opinion on section 768, Ky. Stats., holding that the statute imposed the duty upon the railroad company to maintain such a bridge. The court also held that the case of Blue Grass Traction Co. v. Grover, supra, was not in point, as the court had only

held in that case that the traction company had built the bridge as agent of the fiscal court, and that, as the county was not liable for damage resulting from the defective condition of a county bridge, its agent was likewise not liable. The court cited the cases of Com. v. L. & N. R. R. Co., 109 Ky. 59, 58 S. W. 478, 22 Ky. Law Rep. 572, and P. & E. R. R. Co. v. Com., supra, as supporting its conclusions. We have seen that the last-mentioned case refers to grade crossings. An examination of the other case upon which the opinion was rested shows that it was a grade crossing case.

Counsel for the railroad company insist that the opinion in the case of I. C. R. R. Co. v. Com., supra, is out of harmony with other opinions, but we do not find it so. Neither do we find that it supports the contention of appellee. It was a grade crossing case, but in crossing a part of the right of way of the railroad company it was necessary to have a bridge to level up the public way with the crossing at the tracks. The ditch ran parallel with the tracks, and in crossing the right of way a bridge was necessary to cross the ditch; but the entire crossing was at the grade of the railroad tracks. It is true that the court held in that case that it was the duty of the railroad company to maintain so much of a public highway as was on its right of way, and to that extent the contention of the appellee is supported.

In the case of L. & N. R. R. Co. v. Com., 149 Ky. 459, 149 S. W. 898, it was held that section 768 of the Statutes requires a railroad company to keep its railroad crossings in good order, and that it is no defense for it to show that the county authorities have failed to keep up their parts of the road, as there was a particular necessity for the road to be kept in good condition at the railroad on account of the danger from trains there.

The case of Fiscal Court v. N., C. & St. L. R. R. Co., 202 Ky. 846, 261 S. W. 617, is relied on by appellee. In that case the railroad company, with the consent of the county, had erected an overhead bridge across its right of way. The approaches to the bridge extended beyond its right of way, and a question arose as to whether the county or the railroad company should maintain the approaches, not within the right of way. The court only decided in that case that it was the duty of the railroad company to maintain the bridge within its right of way, and that it was the duty of the county to maintain the approaches outside of the right of way. The bridge in

that case was constructed partly for the benefit of the railroad company, and partly for the benefit and convenience of the traveling public, but it was constructed by the railroad company. While it might be fairly well reasoned that, if it was the duty of the railroad company to maintain a bridge constructed by it for its own convenience, as well as for the convenience of the traveling public, it would likewise be the duty of such company to see that a bridge was kept in proper repair that was constructed by another with its consent, partly for its benefit and partly for the benefit of the traveling public. But the case affords no substantial authority for the contention of appellee. That case also suggests that the common law relating to the duty of railroad companies to maintain crossings has been repealed by section 768 of the Statutes.

In the case of Louisville & Interurban Railway Co. v. Speckman, 169 Ky. 385, 183 S. W. 915, this court adhered to the rule that it is the duty of a railroad company to maintain its crossings in a reasonably safe condition for the use of the traveling public, and, in effect, held that it is always the duty of a railroad company to use reasonable care to so construct and maintain in good repair crossings and approaches over all public streets and highways intersecting the line of its road that they will be reasonably safe and convenient for the usual and ordinary purposes of the public, and further that such duty must be performed by the railroad company, because it cannot be safely intrusted to road overseers, or other authorities of the county unskilled in the work of maintaining railroad crossings and approaches thereto.

It is suggested by counsel for appellee that this court held in the case of L. & N. R. R. Co. v. Croft, 201 Ky. 803, 258 S. W. 679, that the common-law rules relating to railroad crossings are applicable in this state. It is true that in that opinion the court said that one of the instructions submitted the case under the common-law rule requiring the company to maintain the crossing in a reasonably safe condition for public travel, and that another instruction submitted the case to the jury under the statutory rule requiring the company to construct and maintain crossings; but the court made no other reference to the common-law rule, and neither approved nor disapproved the instruction.

The case of C., N. O. & T. P. Ry. Co. v. Dungan, 162 Ky. 36, 171 S. W. 1007, is relied on by appellee. It

is true that case related to an overhead bridge across the right of way of a railroad company. The bridge had been constructed by the railroad company, and it had failed to maintain proper guard rails. This court held that it was the duty of the railroad company to keep the bridge in proper repair, but that was a crossing constructed by the railroad company itself, and the case is not in point. Counsel for appellee place considerable stress on the case of City of Newport v. L. & N. R. R. Co., 174 Ky. 799, 192 S. W. 838. That case holds no more than that a municipality, under its police power, when authority is vested in it so to do by the Legislature, may compel the construction and maintenance of overhead bridges for the purpose of eliminating grade crossings.

An examination of all of the cases cited in the briefs fails to disclose any case directly in point, and we have been unable to find any such case. We find ample authority to the effect that a railroad company must restore public crossings as nearly as possible to their former condition, and that it must thereafter keep them in such a state of repair as will render them reasonably safe for use by the traveling public. We also find that, where a crossing is established after the railroad is constructed, it is the duty of the railroad company to maintain such crossing, the same as if it had existed at the time the railroad track was established; and that it is the duty of a railroad company to keep in repair overhead bridge crossings constructed as a part of a highway, or at least as much of the bridge and its approaches as are on the right of way of the railroad company; and that the duty of the railroad company to so maintain crossings is absolute, and that it cannot be delegated to municipal or county authorities, so that the railroad company may be relieved of responsibility; and that it is the unconditional duty of a municipality to maintain its public ways in a reasonably safe condition for the use of the traveling public.

Counsel for the railroad company argue that the recent case of City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. (2d) 517, is conclusive of the question that it was the duty of the city to maintain this bridge and that is true; but the fact that it was the duty of the city to maintain the bridge does not mean that it could not likewise be the duty of the railroad company. Although the municipality may be bound to keep in proper repair all of its public ways, and it may be responsible to those in-

jured by a failure so to do, yet this does not necessarily mean that a railroad company may not be jointly responsible for the failure to properly maintain an overhead bridge across its right of way to the extent that such bridge is on its right of way.

If the railroad company had erected this bridge when the railroad was built in an effort to restore the crossing to substantially the same condition existing prior to the construction of the railroad, there can be no doubt that it owed the continuing duty to keep the bridge in proper repair. There is no doubt that, if the railroad company had constructed the bridge subsequently to the construction of the railroad in order to avoid a grade crossing, or for the purpose of replacing a grade crossing, or an underpass with an overhead bridge, the railroad company would be responsible for injuries resulting from its failure to properly maintain the bridge. But the question is whether a new overhead crossing established by the city of Hazard with the consent of the railroad company places the burden on the railroad company to see to it that the crossing is properly maintained for the use of the traveling public. It is a new crossing established by the city, with the aid and concurrence of the railroad company. It could not have been established by the city without the consent of the railroad company, unless by condemnation proceedings, and then the railroad company could not have been compelled to erect and maintain an overhead bridge, but only a grade crossing.

An examination of section 768, Ky. Stats., shows that a railroad company has the right to construct its road upon or across any water course, private or plank road, highway, street, lane, or alley, and across any railroad or canal; but, when it does so, it must restore that which it crosses to its former condition as nearly as may be. This court has held that it must not only restore that which it crosses as nearly as may be to its former condition, but it must keep it in repair thereafter. As we have recited, it has also been held that a subsequently established and constructed highway across the right of way of a railroad company must be treated the same as one in existence at the time the railroad was built. This would seem to leave nothing for determination other than whether the statute requires a railroad company to maintain an overhead crossing established subsequently to the building of the railroad, when the overhead crossing is a public way within a municipality, and constructed by the

municipality, with the maintenance thereof primarily resting with the municipality.

It is true that the section contains language which seems to confine the duties of railroad companies, in connection with crossings, to grade crossings and as shown by some of the opinions cited herein this court has held that the statute relates only to grade crossings. If the statute relates only to grade crossings, certainly it cannot be truly said that it repeals the common law any further than as it may have related to grade crossings. The duties of a railroad company pointed out by this court in the case of Paducah & Elizabethtown Railway Company, supra, which there related to a grade crossing, are incumbent on the railroad company in this case, because the common-law duties relating to an overhead crossing have neither been repealed nor modified by statute. The railroad company, as well as the city of Hazard, is responsible for injuries resulting from negligently failing to keep the bridge in question in a proper state of repair.

The railroad company contends that it would be to deprive it of its property without due process of law, in violation of the Constitution of the United States, and particularly of the Fourteenth Amendment thereto, if it should be required by this court to pay damages to appellee growing out of the injury. The authorities referred to in this opinion establish that the railroad company is required to keep public crossings in reasonably safe condition for the use of the traveling public, whether such crossings existed at the time the railroad was built or were thereafter established. It is admitted that the bridge is a public crossing, and we fail to perceive in what respect the railroad company is deprived of its property without due process of law, when it is required to maintain public crossings in a reasonably safe condition for the use of the traveling public. This crossing was established with the consent of the railroad company, and, in requiring the company to maintain it, there is no deprivation of property rights without due process of law. The instructions given to the jury allowed a verdict against the railroad company only in the event that it had failed to maintain in reasonably safe condition that part of the bridge which was immediately over its tracks.

We go no further than to hold that, where a railroad company consents to the construction of a public over-

head crossing above its tracks, it owes the duty to maintain such crossing in a reasonably safe condition for the benefit of the traveling public.

It is urged that incompetent evidence was admitted to the prejudice of the railroad company over its objections. This evidence related to the correspondence and conversations between the city and the railroad company about the maintenance of the bridge. If it were the duty of the railroad company to maintain that part of the bridge above its right of way, there is no basis for the contention that this evidence was prejudicial.

It is made the basis of complaint by both appellants that the court did not properly instruct the jury on the question of contributory negligence. The proof tends to show that appellee knew that the bridge was not in proper repair, but he also knew that it was in continuous use by the traveling public. We cannot hold that he was guilty of contributory negligence as a matter of law in using the bridge at the time of his injury. We find that the court included in the instructions as originally given one on contributory negligence for the benefit of the city of Hazard, but no such instruction was included for the benefit of the railroad company. The railroad company offered an instruction on contributory negligence which was given by the court, and there is no basis for the contention now made by the city of Hazard that the instruction on contributory negligence was not in proper form, and the railroad company cannot and does not complain about the one given in its behalf, as it was given by the court as offered by it.

The instructions as given required the jury to return a verdict for the full amount appellee was entitled to recover, if anything, against both of the defendants, or against either of the defendants. The instructions did not allow a recovery of one amount against one defendant and a different amount against the other. No instruction was offered by either the city of Hazard or the railroad company authorizing the jury to return a verdict in a certain amount against one and a different amount against the other, if the jury should find that appellee was entitled to recover against both. Under the instructions as given the jury was not allowed to award several damages against the appellants. As no such instruction was asked by either of the appellants, the city of Hazard is not in position to make any complaint about the failure to give it, and the railroad company is not insisting that

such an instruction should have been given. Beavers v. Bowen, 93 S. W. 649, 29 Ky. Law Rep. 526.

After the jury had deliberated for some time it returned into court a verdict finding for appellee in the sum of $5,000 against the railroad company, and in the sum of $875 against the city of Hazard. The court read the verdict and refused to accept it, saying to the jury in effect that it could not return a verdict for several damages. The jury returned to its room, and thereafter reported that it could not write its verdict, or did not know what the court wanted it to do. The court offered to write the verdict for the jury, if it would instruct him what the findings were; but it did not avail itself of this offer. The jury returned to its room, and thereafter reported to the court a verdict finding against both appellants and fixing the amount of recovery at $5,875. The city of Hazard is complaining about this alleged error.

The trial court was right in his position that the jury could not return separate verdicts under the instructions given. An instruction, whether right or wrong, binds the jury, and cannot be disregarded. Lynch v. Snead Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852; Krieger v. Standard Printing Co., 191 Ky. 552, 231 S. W. 37. If the court had accepted the verdict as first returned by the jury, and had discharged the jury, it would have been the duty of the court to set aside the verdict and award a new trial. The jury had determined the amount that appellee should recover, but had attempted to place the greater part of the recovery on the railroad company. Should the trial court have accepted the verdict of the jury, knowing that it was not in accordance with the instructions, or should he have declined to accept it and required the jury to return a verdict in conformity with the instructions? He followed the latter suggested course, and as the result of his sending the jury back a verdict was returned in accordance with the instructions, and the amount of recovery remained the same.

If a jury returns a verdict which is irregular or imperfect, it may be required to correct it. It was so held by this court in the case of Tarlton v. Briscoe, 1 A. K. Marsh. (8 Ky.) 67, and we do not know of any case since where it has been held that an irregularity in a verdict may not be corrected before the jury is discharged. In that case the jury had returned a verdict for the plain-

tiff in an action to recover the value of a slave and damages for the detention. The jury was told that the verdict was imperfect, without finding the value of the slave and at least some damages for the detention. The jury then returned to its room, and thereafter returned a verdict for plaintiff, fixing the value of the slave and damages for the detention. This court held that it was not error to require the jury to correct its verdict. Upon a consideration of the whole case, we have reached the conclusion that the judgment should be affirmed.

Judgment affirmed.

Whole court sitting.